**Vladimir MOTOVILOFF and Vernie Bennett, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, et al., Respondents.**

**MATSON TERMINALS, INC., Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, et al., Respondents,**

v.

**Vladimir MOTOVILOFF and Vernie Bennett, Real Parties in Interest.**

Nos. 81–7872, 81–7874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided Nov. 9, 1982.

cross appeals from that portion of the decision of the Board which affirmed the ALJ's finding that claimants were "person[s] engaged in longshoring operations."

The ALJ concluded that claimants were engaged in "maritime employment" and thus met the Act's "status" requirement (section 2(3)); but because the Richmond facility was not an "adjoining area" (i.e. adjoining navigable waters), the Act's "situs" requirement (section 3(a)) was not satisfied. The Board affirmed both determinations.

We affirm the Board's ruling that the "situs" requirement has not been shown. And since coverage under the Act requires meeting both the "status" and the "situs" requirements, it is not necessary at this time to review the correctness of the Board's ruling as to "status."

## I. STATEMENT OF CASE

Matson operates dockside terminals along the west coast of the United States receiving, loading and unloading for Matson Navigation Company vessels (Matson Navigation) cargo most of which at the Oakland facility is shipped in metal containers.

The containers are subject to repair or maintenance by mechanics, those with visible damage being repaired within the terminal area and immediately returned to use. Containers are also subject to regularly scheduled "refurbishment" which includes replacing worn out parts, painting, and cleaning and any necessary repairs. All "refurbishment" takes place at the Richmond facility, operated by Matson since early 1978. The Richmond facility shares a building, previously used for shipbuilding, with a non-maritime steel manufacturer. The surrounding area is comprised of both maritime and non-maritime commercial enterprises.

The decision to locate the refurbishing facility in Richmond was based upon a com-

Philip Weltin, San Francisco, Cal., for Motoviloff.

Norman A. Sauer, San Francisco, Cal., for Director, Office of Workers' Compensation Programs, et al.

Appeal from the Benefits Review Board.

Before MERRILL and POOLE, Circuit Judges, and ROTHSTEIN *, District Judge.

POOLE, Circuit Judge.

This is an appeal by Vladimir Motoviloff and Vernie Bennett (claimants), injured in unrelated accidents while working as mechanics for Matson Terminals, Inc. (Matson)[1] at Matson's container Refurbishing Facility in Richmond, California (the Richmond facility), from a Decision and Order of the Benefits Review Board (Board) upholding the denial by Administrative Law Judge Halpern (ALJ) of their claim for benefits under the Longshoremen's and Harbor Workers' Compensation Act (Act).[2] On the basis that claimants' injuries did not occur on a proper "maritime situs" Matson

* The Honorable Barbara J. Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

1. Matson is a wholly owned subsidiary of Matson Navigation Company.

2. 33 U.S.C. § 901 et seq. (1978).

bination of economic and efficiency factors, and although that facility is 750 feet from the water, there is no direct access to the port. It is located approximately 12 miles from Matson's facility in Oakland.

Mechanics at the Richmond facility work there exclusively. Mechanics working at the terminal are set apart from the mechanics at the Richmond facility, having separate functions, payrolls, and budgets.

## II. COVERAGE UNDER THE ACT

Section 3(a) of the Act, in part, provides: "Compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon navigable waters of the United States (including any adjoining pier, wharf, drydock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).[3]

The Richmond facility is not one of the sites enumerated in section 3(a), and does not qualify as an "adjoining area."

We held in *Brady-Hamilton Co. v. Herron*, 568 F.2d 137 (9th Cir. 1978) that while physical contiguity was not necessary to constitute an "adjoining area", there must be a "functional relationship". An area may be an "adjoining area" even if not physically contiguous to navigable waters if it bears a "functional relationship" to an activity on navigable waters.

Among factors to be considered in determining such relationship[4] are (1) the particular suitability of the site for maritime uses; (2) whether adjoining properties are devoted primarily to uses in maritime commerce; (3) the proximity to the waterway; and (4) whether the adjoining site is as close to the waterway as feasible. Applying these factors to the present case, the Board found no "functional relationship".

Refurbishment does not require a site particularly suited for maritime uses;

and the actual choice of site here was largely governed by economic factors of cost and transportation. Its marine proximity was not important.

Under these circumstances we agree with the Board's conclusion and affirm as to the lack of "situs". It is therefore unnecessary to determine the "status" factor in this case.

*The decision of the Board is affirmed.*